Your argument next in, um, Isaac Nortiz v. NRA Group, 19-1227. Good morning, Your Honors. May it please the Court. My name is Craig Sanders, and I represent Aldine Isaac and Julissa Nortiz in this appeal. This is an appeal of an FDA decision. As this Court has held, as well as every other circuit in the nation, the FDCPA statute is a strict liability statute. At issue here is a collection letter sent to both Mr. Isaac and Ms. Nortiz that demanded twice the amount that they actually owed. Were there letters that were sent before this letter? The initial responses from the defendant... Were there letters sent before this letter, yes or no? The answer is no, although the defendant in the summary judgment cycle alleged yes, meaning we went through the discovery process, and the September letters at issue in the complaint were the initial letters, and then the subsequent production was of August letters, which were then alleged to be the initial communication. Putting all that aside, do you maintain that there's a genuine dispute as to whether your client received the August letters? We did not receive the August letters. There was no testimony from the plaintiffs as to the receipt of the August letters. This was a late-arriving fact at issue in the summary judgment. I have the trial court below. There was a Rule 56 statement from the NRA group, and they say that they sent the letters in August, and you didn't dispute that. Do you dispute that they had sent the letters in August? We dispute that they had sent the letters in August. We also will note to the court that that was the first arrival of that fact, meaning in the 56-1 statement. We had gone through discovery. We had received interrogatory responses, and there was no mention of the August letters. However, when it came in, we have a copy in the record of the letter that was sent in August, which is at the appendix, page 173. Do you think that's not, that that was never sent, that that's fraudulent? Well, let's assume for a moment that the August letter was in fact sent, and there was an August and September letter, but the plaintiff said that there was only a September letter, and the defendant argues that there was both an August and September letter. That would be an issue of fact that would have precluded summary judgment in this case. It would have required resolution from the trier of fact, the jury. I understand, but you can't say that there wasn't an August letter if I have a copy of the August letter in the record, and you're not giving, explaining why one should not credit the existence of the evidence. Well, I can say that it would be a question of fact for the jury as to whether or not there was an August letter. I don't dispute that there is one in the record, but we would end up with very different decisions potentially. A moment ago that the statute is a strict liability statute, so my understanding is that the defendant here is not saying that they're excused because they made a mistake, but the excuse is that the letter itself, the September letter, was not on its face confusing. It doesn't meet the requirements of whether there's really a claim under the statute. Are you saying that the district court erred by applying the least sophisticated consumer test? Is that the argument, that you shouldn't even get to that because it's a strict liability statute? No, the district court's error in this regard was that they created an exception to the statute. We made a mistake exception, or it should have been an obvious exception, to what we have been arguing is a G letter, and the G letter requires by statute that it state the balance. For a letter to violate the statute, it has to be confusing. Doesn't the district court have to investigate whether it would have been confusing to the least sophisticated consumer just to determine whether there's a violation of the statute in the first place? What the court is stating is accurate for a violation of Section E, that it needs to be confusing, but not with respect to Section G, which states and enumerates certain elements. You think the district court should have just said there's a mistake in the letter, therefore there's ipso facto a violation of G, and that should have been the end of the analysis, right? Well, in this case, the district court should have said there's a question of fact which requires resolution as to whether or not the September letter was the G letter or the August letter was the G letter. Okay, fine. So let's assume that the September letter is the G letter. Okay. If the September letter is the G letter, the district court said, okay, I'm going to look to see whether it meets the least sophisticated consumer test. You're saying that was a mistake? That would be a mistake, Your Honor. Why? The least sophisticated consumer standard, Well, the least sophisticated consumer is not aware, by definition, of their G rights. So were the letter to have omitted the validation language in its entirety and just have a blank, perhaps even a blank with a square, where the collector comes in and says it was a mistake, we should have included that language, but we omitted it by accident, that would violate G, but the least sophisticated consumer would not have been aware that they would have had those rights. The statute requires that language. It requires certain elements in the G letter. They're mandatory. You're relying on our decision in Carlin, in part. In Van Gordon? In that proposition, is that correct? Well, Van Gordon says the same thing, that it's a strict liability statute. We could go back to Hart. We could go to Russell. We could go to every single district and circuit court in the nation. Let me just go back to this initial communication so that I understand. You have not disputed until now on appeal that your clients received that initial August communication. I don't believe that to be accurate at all. Did you concede that during the summary judgment proceedings? That's my reading. No. The court in its footnote said there is an additional factual issue as to whether the September 2015 letters were the initial communication subject to 1692G. Specifically, NRA has submitted evidence that the August letters were the initial communications between the NRA and the plaintiffs. But this is the key issue, and this is why this is up on appeal. The court reached this conclusion. However, the court concludes that even assuming arguendo, the September letters were the initial communications, the letters do not violate 1692G, and the court need not address this issue. So the court recognized that there was a factual dispute between the parties. Is it in your position from day one to today that your clients didn't get the August letters? Correct. Correct. Do you think that why does it matter whether they got them? So the statute says that the G letters need to be sent, right? Does it say that the lender has to ensure that it's received? We have two individuals here who are both alleging the same thing. There's 12,500 of these exact same letters at issue out on the street. None of them were recalled. None of them were modified. So we're still stuck with the singular issue. If it's a question of whether or not it's an initial or subsequent communication, we're left with an issue of fact that's contested by the parties. And the court's conclusion that it would be an irrelevancy is error. Well, the court says it would be irrelevant which one is the initial one if it were true that even if the second one were the initial one, it still complied with G, right? That's what the district court says. Right. The court's conclusion that the September letter complies with G because the mistake was of demanding twice the amount that was owed would be obvious. That's an error because G requires that the amount actually owed is stated in the collection letter, and that's consistent with this court's decisions in a number of cases, including Carlin. So when you marry a strict liability statute with a requirement that the balance and the amount due be accurately stated, if the September letter is the initial communication as alleged by the plaintiffs, the court's decision was error. Maybe this is a summary judgment, correct? This was on summary judgment. Maybe this is a Rule 56 problem issue. The NRA group puts in these initial August validation notes. Is that correct? That's correct. And on summary judgment, your clients, you, did not put in any evidence to the contrary. For example, an affidavit where they said we never received these validation notes. I will look at the record between now and then, but I don't believe that to be an accurate statement. The plaintiffs both maintained. I'm going to ask you to look at the record. Did you convert, did you controvert that assertion in your own, in your response to Rule 56? We did, Your Honor. We did. I want to find the specific sites to it, but the plaintiffs were consistent throughout the entire process that the September 15th, 2015 letters, sorry, were the initial communications. There were depositions. There was 56-1s. There was a, this was our motion for summary judgment, which was made after. You made an argument, as I understand it, after the summary judgment discovery period was done. You made an argument at the district court, but was there anything that you put into evidence to contradict what the NRA group. To prove that. Not prove, I mean prove that summary judgment, but to contradict any factual assertion by your clients that said we never received these validation notes. As I said, I. You're going to look. The plaintiffs were consistent throughout, but the September letters were the only communications that they had received. It matters to me. No, no, I'm not. I'm talking about Rule 56. Right. How they were consistent. So if they were consistent because the lawyer says no, but they don't put anything in a 56.1 statement and they don't put it in an affidavit to contradict it, that means nothing to me. I understand, Your Honor. You'll look. I will look in the appendix while we're. Thank you. So you've reserved three minutes for the model. Ms. Salvo. May it please the Court. My name is Cindy Salvo. I'm here representing NRA Group. Can you answer the question that I just asked? Yes. The appellants never raised this before, what happened in summary judgment, and I actually was not the attorney below, Your Honor. I came in on appeal, but I know the record very well. My client submitted a counterstatement of material facts, which said that the August 15th letter was the first letter, and that's found in the Appendix 148, Paragraph 8. And we said right then that it was the existence of the August letter. There also was something interesting that was left out. My client also, in the discovery response, say that the September 2015 letters were the initial letters. I was just going to address that issue, Your Honor. In actuality, in preparing for this argument, I see that we had a third amended set of interrogatory responses. That was not included in the appendix, even though they were aware of it because they included the third amended responses to document demands was in the appendix. However, in our third amended set of interrogatory responses, it said right then that we dispute that the September 15th letter is the initial communication, rather the August 15th letter. All of that was in the records, Your Honor, on summary judgment. All they had to do, as I think you've said, is come up with one bit of evidence to counter. We had the in-house counsel from NRA submitted an affidavit saying there was an earlier letter that was August 15th, and we provided copies of the letter. They're saying that there's an issue of fact for trial, but there's no issue of fact that was created on summary judgment. They could have put in the affidavit of the two plaintiffs saying we never received such a letter. Can I ask you this, though? Does it matter if the plaintiffs never received the letter? It does not matter. There's the mailing rule, the mailbox rule, that says that it's to be considered to have been received five days after mailing unless there's some evidence shown to the contrary. They've not shown any evidence to the contrary. Clearly, and the only claim... Is that in the statute? Does G actually say that your client has to ensure that it was received by the... It doesn't address that, Your Honor, no. But their sole claim on this appeal is as a G claim. You say it doesn't address that. Have we said anything about that? I don't know the answer to that, Your Honor. I've never seen that question addressed before. I've been doing FDCPA defense for 20 years. I've not seen that issue addressed before. But in any event, that evidence wasn't put in in any event. We don't have the plaintiffs saying they never received it. There was absolutely no challenge to our statement. We've said here's the letter, here's the affidavit saying that this is the letter that went out first. Do you agree that the September letter contains errors? The September notice? The September notice contains an extra line which says that there's a line which says what the debt is. There's a line underneath that lists it again. It's very clear that there's an error there, and what that addresses is the confusing aspect of this case. Whether the least sophisticated consumer would be confused by that. That second listing is the exact same amount to the penny as the one that's above. And more importantly, when it says date of service, the first line gives the date of service. The second line says 0-0-0-0-0-0, alerting anyone to the fact that there was no date of service here. In addition- That's an error. Oh, there was unquestionably an error. What happened here, though, is the- It's an error about what that relates to the amount, correct? It's an error that relates to the amount, correct. What the court says is that there's not going to be any confusion by the least sophisticated consumer. And they actually asked- Total due on the letter is also twice as much as the amount that's actually owed, right? I'm sorry? Total due. It's not just that there's different listings where it provides your charges, but it also has a bottom line that says this is how much you owe. Well, it shows it at the top- The amount that it's telling the debtor how much they owe is wrong. It shows it at the top and the bottom. It says total due right up at the top where it has those zeros. Maybe three federal judges would figure this out. And, you know, with great respect, how is it possible that we can say that the least sophisticated consumer- so I think about some relatives- would understand that this was a clear error and that they actually owe half the amount that's in the total due? Well, the district court, before we would reach a decision, actually asked NRA to conduct a survey, which we did. We went back to the 12,500 letters that went out. Not one person paid double. There was not one payment. And plaintiff's counsel at one of the earlier arguments in the case said that they believed that a survey would be absolutely helpful. It would be a good indication, they asked. However the survey comes out, would that be a good indication as to whether consumers would be confused? And they said, oh, absolutely, it would be. The survey says that nobody overpaid, but do we know if they were confused? Does it tell us that question? Well, we tried to figure out that question. The problem is that when collectors make notations on calls, there's not a standard way to say that the debtor was confused. In order for us to figure out if any debtors were confused, we would have to listen to the recordings for all 12,500 individuals and all the recordings that they're worth, basically tens of thousands of calls. So we were not able to get that information in any reasonable manner. But I think the fact that not one, out of 12,500, not one person paid double. Is it possible the survey results are explained by a number of debtors calling in and saying, this is very confusing, I don't understand what this means, and then it being clarified by the company? I suppose that that's possible, but there was not, because there's not a uniform way to code, there's no way to search for that. It's something probably that the collector would put in, though, but there was no way to search for it because there's not a uniform way that they would code such a thing. We just know that nobody was confused to the point that they did send in. And they said that there were, you know, I think a big thing is the red flag of the service date. Also important, I think, is the fact that this was a debt for visiting a medical center, a doctor. I think that, you know, you may not know how many times you went to Macy's and made a purchase, but if you went to the doctor, a specific doctor, Peconic Medical Group, I think you would know how many times you'd been there. And the fact that the date is for the first line, but the second line says date of service 00000, it shows that the person would say, well, I only went there once, and these are all zeros, so this must be wrong. Also, that is a careful consumer. I mean, the problem is we are talking about agree or disagree. You know, some people might disagree that the least sophisticated consumer test is the right test, but we're talking, what you're describing is a careful consumer. So what we've got to keep in mind is that the test, for whatever reason, is the least sophisticated consumer. So you're asking the least sophisticated consumer to realize that most people, frankly, forget about the least sophisticated consumers, most people look at the bottom line. You agree with that, right? I mean, I don't know what these surveys say, but most people look at the bottom line, and as I think you pointed out in answer to Judge Menasche's question, you don't know whether the survey plumbed into or asked about whether consumers contacted before making the survey. Yes, because it had no real way of doing that other than to look at the bottom line. That might be relevant. I think it should be pointed out, though, as well, that there were a couple of cases, there was nothing in the Second Circuit that I found, but other cases which said, provided that the person had received an earlier letter with the correct amount, that the second letter would not be confusing. Sure. I mean, this is why we've been asking questions about the initial communication in August. Right. I think also it should be pointed out that they, plaintiffs waived their E and F claims here. They said they were just going forward on appealing the G claim. This is not a G claim, because a G claim relates exclusively to an initial communication. This is not an initial communication. They put up no evidence of it being an initial communication to counter our evidence of the actual letter. So there's no issue of fact for trial. It would make no sense to demand it. We have said that even the least-sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care. Do you think that that's all that's required to realize that there was an error here? With some care, absolutely. I think that what it's saying is that even a least-sophisticated consumer can't throw their hands up in the air and not look at the whole letter. They are charged with reading the entire letter and with a rudimentary understanding of how life works. Somebody would know how many times they went to the doctor. But you're also relying on the fact that the date was written as 00000. So if it actually had a date there, would this be a different case because it wouldn't be as obvious? I think it might be. I think that the 00s are a huge red flag to anyone, even a least-sophisticated consumer. And I think, as I said, I think the consumer, at least it makes sense to me that a consumer who has been to the doctor is going to know how many times, whether they went once or twice, certainly. They may not know if they went four or five times, but they're going to know if they went once or twice. And the amount is exactly the same, too, down to the penny. Well, sure, but if it's the same doctor, same, you know, having a visit, that wouldn't make sense. Could be, yes. Do you agree your best argument is this initial communication issue? I think that that knocks this case right out because this is all they appealed is the G claim, and this is not a G claim. It's just not an initial communication, and they presented no genuine issue of material fact that would require us to go further on this inquiry. Why didn't they have people, why didn't they have their plaintiffs put in affidavits? They put in nothing. They didn't counter it. And I find it disturbing that the third amended responses that we did to interrogatories was not in there because it says it right in there. It also says it in the counterstatement. If we were to think, if we thought that the August letter was the initial communication, then what happens to the September letter? Like, is that it just doesn't matter? The September letter goes under a different standard. It can't be analyzed under G anymore. It can be analyzed as confusing. Was it misleading? They had a claim initially about that. What happened to that claim? It's gone. What's before us on appeal is the G. Just the G claim. They were very clear about that, that they dismissed, I don't know why it was waived, but they waived their E&F claims and relied solely on the G claim. I think because the E&F would ask whether the letter is misleading, and the court found that it was not misleading. A G claim under G is very specific. The accurate amount of the debt must be set forth. Much harder for you. Right. I mean, we can't then argue about misleading. It doesn't matter anymore. If the right amount wasn't in there, the right amount wasn't in there. The only problem is this was not initial communication. I mean, your argument is that the right amount was set forth in there because you think even the least sophisticated consumer would have looked at it and seen the right amount. Isn't that right? That's correct, although under the G standard it would be a little bit tougher because maybe they would say, well, you put the wrong amount in, whereas under the E&F standard they're going to look at, is this confusing? Because the court said. . . I'm actually just pivoting back to the G standard. But you think that they would see the right amount. So if you have to set forth the right amount, and in the letters that you sent, the September letters, there is the incorrect, indisputably the incorrect amount as total amount due. Well, you could argue that even under the G claim that the correct amount was set forth, but that's a tougher argument because they're not looking at whether the letter was misleading. So my argument about zeros and everything else is not really relevant. It just said was the amount in there. But this is just simply not a G claim. It absolutely is not. That's the thrust of your counterargument. Okay. Yes, Your Honor. Thank you very much. Thank you, Judge. We'll hear from Mr. Sanders. Thank you, Your Honor. All right, what do you got? Well, we could start with Plaintiffs 56-1, paragraph 8, which is on A143 of the appendix. A143 of the appendix. 143. 143. I'll read. The letters were the initial communications NRA sent to the plaintiff concerning the deaths. And the citation is to defendant's second amended responses to plaintiff's first set of interrogatories, which were verified by the defendant. Yeah, but the August letters come up in the Rule 56 statement that NRA files June 2018. So there was a subsequent statement, right? They, in their counterstatement, served a third amended responses to the interrogatories. Now, for the first time after two prior verified interrogatories from their own client, saying, oh, we found an August letter. Right, but before the district court is deciding the motion for summary judgments, NRA files on June 7, 2018, a Rule 56 statement saying that there were letters sent in August. That's in the appendix, page 1140. And after that, after they bring in that evidence to the plaintiff's controversy? Right. They amended their own second interrogatory responses by issuing a third interrogatory response, also verified by their client, saying, we found now an August letter. And that's how they issued a counterstatement of facts in their 56-1. That's after this statement that you're pointing to right now, right? Well, the sequence was we do the 56-1, they do the counterstatement that came afterwards. But here we have two verified statements from NRA group saying the September 15th letter, September, sorry, 2015 letters were the initial communications. But they subsequently said that they found the August letters. Even if that's all that was before the court, that still creates an issue of fact. Why? Why? You convert, where do you deny receipt of the letters? Where do we deny the receipt of the letters? The August letters, yeah. You're asking, in essence, for the plaintiffs to prove the negative. I'm asking you to help me understand how there is a genuine issue of fact over the August letters. They now have said, admittedly, after changing their position, that they sent them. Well, they changed their positions in the summary judgment cycle after discovery was closed. This seems to be within the summary judgment cycle. Right. Within the summary judgment cycle is when they changed their position. Help me understand how you have created a genuine issue of material fact over the August letters. They put in proof that these letters were sent. If we start from the premise that the plaintiffs are saying, these are the communications, the first communications that we received from this defendant, and then the defendant says yes to that twice and then a third time says, no, we found an earlier communication and produces it late in the round, you have a discrepancy between the plaintiff's position and the defendant's position. There's no dispute that these letters exist, right? Well, there is a dispute. These aren't imaginary letters, right? There is a strong possibility, based on the timeline, that a reasonable jury would conclude that there are fabrications for litigation rather than actual letters. So you're saying they put in perjured evidence? Based on everything that transpired in the sequence that went by. What's the basis for that? Because we have two verified from their clients signed on the penalties of perjury saying September were the initial communications. And then only on the third iteration. What was that? Did you dispute what the opposing counsel said, which is that they amended those answers to say that actually we were mistaken, there was an August letter? Correct. The third amendment says that there was an August letter. The first amendment does not. The first iteration of it does not. Clearly this was the seminal issue in the case. We had demanded in production all documents. Your statement doesn't make sense once the letters appear because you then have to, through some oratorical flourish, make the letters disappear. They're there. I'm not making those. That's what they say. We made this motion for summary judgment based upon the defendant's proffer during discovery in their RFP responses to our production demands, which were modified also in a second submission, their interrogatories, which we responded to twice, that these were the initial communications. We would not have made a motion for summary judgment if they had suddenly produced these August letters because we would have recognized that that would have been an issue of fact that would have precluded it. What was the reason for them withholding the August letters? What possible motive would they have? They said they found them later on. I mean, that seems to me perfectly plausible. It's actually not really perfectly plausible, Your Honor. The production requests that come from our office ask for all the account history, the account notes, and any communications between the two parties. It's not a large quantity of documents. We did that for both plaintiffs, and neither plaintiff was in an August letter. We got responses from them to our RFP. We got amended responses to our RFP. We got responses to our RFI. We got amended responses to our RFI. So where did these August letters that had not been discoverable for two years suddenly appear from as part of this process? So just so that I understand, when you referred to 143, paragraph 8, the letters were the initial written communication NRA sent to each plaintiff concerning the debts, and you cited, and this is you, not your clients, cite to defend Second Amendment amended responses to the first set of interrogatories. What was in that first set of interrogatories? What was that response? Their response to that was at paragraph 11 of their response to your interrogatories. The defendant's discovery response meant that the September collection letters were internally considered initial written communications, but then they point that they served a third amendment. Incorrectly considered. I'm sorry. Say that again. What are you reading from? Their counterstatement of facts. They're 56-1. Okay. That's at 148. It says, response disputed. Plaintiffs are intentionally misconstruing defendant's use of the term, in quotes, initial written communication. Defendant's discovery response meant that the September 23rd collection letters are internally considered initial written communications. Defendants served a third amended response to plaintiff's first set of interrogatories and responses where they produced, among other things, other, quote, unquote, initial written communications sent to plaintiff prior to the September 23rd letters and August 20th letter for the undisputedly correct amount as will be described in more detail below. See amended responses dated July 31st, 2017. We've had this colloquy back and forth, but they are responding, no, no, no, no, no, no. To the extent that you're relying on our response to the first set of interrogatories, that's wrong. Here's the reality. So they are, at this point it seems to me, eliminating the dispute. They're saying there's an initial written response or initial written communication in August. I think that you would then be required to dispute that. Well, there's no third version of the 56-1 process. There's no reply to it. But there was also no affidavit, no nothing else. And, Your Honor, I was searching through the record while we were sitting here because I have a distinct recollection that there were, in the reply papers, affidavits from the two clients that those were the initial communications, but I don't see that. I'll tell you what, if you find something by this Friday, send us a letter by close of business on Friday. Thank you, Your Honor. Thank you very much. We'll reserve the decision. We'll hear argument next in Negron v. Weiner, 19-1606.